DANTE A. GROSSO, PROSECUTOR AND RELATOR, v. CHARLES R. ERDMAN, JR., DIRECTOR OF MUNICIPAL AID, RESPONDENT.

SAMUEL KEIL, PROSECUTOR AND RELATOR, v. CHARLES R. ERDMAN, JR., DIRECTOR OF THE MUNICIPAL AID ADMINISTRATION OF THE STATE OF NEW JERSEY, AND MUNICIPAL AID ADMINISTRATION OF THE STATE OF NEW JERSEY, RESPONDENTS.

Submitted October 7, 1941—Decided March 13, 1942.

Before BROGAN, CHIEF JUSTICE, and Justice HEHER.

For the prosecutors and relators, *Alfred J. Grosso,* for Dante A. Grosso (*Marius Grosso* on the brief); *Meyer M. Semel,* for Samuel Keil.

For the respondents, *David T. Wilentz,* Attorney-General (*John F. Bruther,* Assistant Attorney-General, of counsel).

BROGAN, CHIEF JUSTICE. The prosecutors, Dante A. Grosso and Samuel Keil, by separate writs of *certiorari,* consolidated here, raise the question of their right to be continued in the employ of the state as statisticians in the Municipal Aid Administration, a state agency. The failure of its director, Charles R. Erdman, Jr., to appoint them as such statisticians is, they claim, an invasion of the rights they enjoy under the statute commonly known as the Veterans Act (*R. S.* 38:16-1, 2, 3). A brief history of the employment of these prosecutors is necessary to an understanding of the precise point involved. Both are veterans of the World War 1917-1918. Both were appointed as statisticians in a bureau known as State Emergency Relief Administration, Mr. Keil on November 20th, 1933, and Mr. Grosso on May 1st, 1935. On August 1st, 1936, both were, according to their brief, "transferred to the State Financial Assistance Commission which took over the duties of the State Emergency Relief Administration and· succeeded the same." In 1940 a new agency, State Municipal Aid, was created as successor to the State Financial Assistance Commission (chapter 151, *Pamph. L.* 1940). All of· the employees of the former bureau were, under date of July 2d, 1940, notified "that all employment will be terminated as of July 15th, 1940." On that day Mr. Erdman, director, organized the newly created agency and re-employed almost all those who had served in the Financial Assistance Commission. He did not include the two prosecutors and he did appoint four persons to do statistical work, three of whom had been previously employed in other departments of the Financial Assistance Commission; the other had not been a state employee. No charges were preferred against the prosecutors nor was either prosecutor at any time appointed for a definite term in any of the several bureaus.

The argument advanced is that these prosecutors could not legally be discharged except for cause since they were veterans; that they are entitled to employment in the newly created agency because of their status in the agency which

preceded it; and that the abolition of the Financial Assistance Commission was a subterfuge and that their positions were in fact continued.

By the provisions of the Veterans Act, *supra*, veterans are given a preferred status and when appointed to office or position under the government of our state or any of its subdivisions, mentioned in the first section of the statute, the term of which is not fixed by law, such person is entitled to hold the post during good behavior. Under the statute which created the State Emergency Relief Administration (*Pamph. L.* 1931, *ch.* 394, *p.* 1451) the director was empowered to appoint temporary assistants, which appointments were subject to the Civil Service Laws (fifth section, page 1455). The State Financial Assistance Commission was created in 1936 (chapter 83, *Pamph. L.* 1936). Mr. Arthur Mudd, who had been director of the Financial Assistance Commission but is now deputy director of the Municipal Aid Administration, testified that at first the Financial Assistance Commission had no "payroll of its own;" every person who performed service for it was "loaned" by some other department head; that the employees of the Financial Assistance Commission, when appointed, were only temporary employees; that the prosecutors at no time "were engaged in a permanent capacity in the State Emergency Relief Administration or its successor, the Financial Assistance Commission." By the statute of 1940 (chapter 183, page 595) the State Financial Assistance Commission was abolished as well as "all other offices, positions and employments." The powers and duties of the Commission were transferred to the State Municipal Aid Administration and "for the purpose of completing all matters now pending and incompleted" (section 2) the funds of the former bureau were transferred to the new body to wind up the affairs of the Financial Assistance Commission (section 4).

By the statute of 1940, chapter 151, page 318, the newly created Administration was to consist of "a Director of municipal aid and such other officers and employees as may be employed * * * pursuant to this Act" (section 2, page 318). In this statute the director is empowered in his

discretion (section 3, page 318) to appoint "such other assistants and employees as he may deem necessary, and they shall serve at his pleasure, and shall receive such compensation and perform such duties as shall be prescribed by the director." The statute further provides (section 27, page 328)—"In any employment, the director *shall give preference wherever possible, but in his absolute discretion, to the present employees of the State Financial Assistance Commission, having in mind the fitness of such employees* for the performance of the duties to be assigned to them and the changes in functions of the Administration from those of said State Financial Assistance Commission." (Italics supplied.)

As a preface to considering the questions raised, these several statutes, it must be remembered, were emergency measures whose continuance on the statute books depended on changing conditions and the necessities of public welfare. The first of these statutes, *i. e.,* Emergency Relief Administration, created in 1931, *supra,* was limited in existence to January 31st, 1933. Its life was extended to 1934, to 1935, and finally to April, 1936. The employments necessary to the administration of that bureau were, by the statute, only temporary. The time for which the existence of the Financial Assistance Commission, the successor bureau, might continue was not fixed; the prosecutors were transferred thereto and their positions were not characterized as temporary, were not for a fixed term, and their employment consequently seemed to be protected by the Veterans Act, *supra.* But whatever tenure they may have obtained by their transfer to the Financial Assistance Commission, that bureau was abolished by the statute of 1940, *supra,* and all employments were terminated. This action of the legislature wiped out any right prosecutors had to remain as state employees. That the legislature had the right to abolish these offices and positions cannot be gainsaid. Nor does the fact that the holder of such position was a veteran create a bar to the abolition in good faith of the office or position held by such veteran. It is clear that if the office is legally abolished there can be no outstanding right thereto. *Toomey* v. *McCaffrey,* 116 *N. J. L.* 364, 366.

Just what the duties of a statistician were in the former

or present bureau does not appear. The prosecutors argue in their brief that no testimony has been offered by the respondents from which it can be found as a fact that there have been any changes in the functions of the Administration from those of the said Financial Assistance Commission; that no proof was offered to show the prosecutors were not fitted for the performance of the duties in the statistical department of the Municipal Aid Administration. This point has no merit. The burden of producing such proof—if it was material—is not for the respondents but rather for the prosecutors.

It is further argued that the abolition of the positions in question was subterfuge. Prosecutors rely on such cases as *Ingram* v. *Jersey City*, 63 *N. J. L.* 542. It is not necessary to discuss the distinction between the two cases. An examination of the facts makes the distinction obvious. Compare *Nickerson* v. *Wildwood*, 111 *Id.* 169, and *Maxwell* v. *Wildwood*, 111 *Id.* 181; *affirmed*, 113 *Id.* 404.

It seems to us that the Veterans statute conferred no tenure on these prosecutors while they were employed in the Emergency Relief Administration. The bureau itself being temporary, it follows that the employment was temporary. But while they were employed in the Financial Assistance Commission, the employment not being temporary and being without term, and conceding that tenure resulted because of their status as veterans, yet if the prosecutors would prevail they must dispute the right of the legislature to abolish that Commission and its several offices and positions. And this of course is an impossible task. Now while the Veterans statute, *supra* (38:16-3) prohibits the abolition of any position or office held by a veteran for the purpose of terminating the service of such veteran, that inhibition only extends to the governing body of any state department or of any county, municipal or school district and no further. It does not prevent or limit legislative action by the state. There is no statute that requires the re-employment of veterans by a commission set up, as here, by the legislature as successor to the agency in which such veterans were employed. But the prosecutors urge that the 1940 statute itself (chapter 151,

section 27) entitled them to employment by the new commission. The argument is made from this language in the statute: "In any employment, the Director shall give preference whenever possible, but in his absolute discretion, to the present employees of the State Financial Assistance Commission, having in mind the fitness of such employees. * * *." The argument is that absolute discretion must be reasonably exercised, relying on a Pennsylvania case, *In re Shelly*, 2 *Atl. Rep.* (*2d*) 809. This argument we do not consider sound. The prosecutors must show that the director abused his discretion, that is, acted unreasonably or contrary to law. In the Shelly case the court held that the absolute discretion vested in the Attorney-General of Pennsylvania by statute, giving him power to supersede a district attorney, was abused. In the instant case the prosecutors show no abuse of discretion by the director. The fact that all of the statisticians with whom they formerly worked were re-employed or that extra men, not formerly associated with the several agencies, were employed by the new Administration is not conclusive of discrimination. Such appointments are not unreasonable or contrary to law. The director, under the statute, *supra*, had a legal right to do as he did and his exercise of that right is not an abuse of discretion.

The final argument—that to exclude the prosecutors is in effect a repudiation of the Veterans Act—is also unsound. To hold that the Veterans Act applied to a situation exhibited by the facts in this case would be to extend that statute beyond its plain terms. The legislature was within its prerogative in abolishing the Financial Assistance Commission and terminating all employments thereunder. The legislature may abolish any office, as it sees fit, except those that are created by the Constitution itself. We find no proof whatever that the director, in organizing the Municipal Aid Administration, was prompted by an ulterior motive. *Cf. Harker* v. *Bayonne*, 85 *N. J. L.* 176.

A judgment may be entered for the respondents, with costs.