J-S24043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| THOMAS FRANCIS WAINMAN, JR. | : | |
| Appellant | : | No. 1418 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 2, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000640-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| THOMAS FRANCIS WAINMAN, JR. | : | |
| Appellant | : | No. 1428 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 2, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0004839-2020

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: SEPTEMBER 26, 2023**

Appellant, Thomas Francis Wainman, Jr., appeals from the judgment of

sentence entered in the Court of Common Pleas of Lancaster County after a

jury convicted him on one count of stalking[1] at docket number CP-36-4839-

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2709.1(a)(1).

2020 and one count each of stalking[2] and defiant trespass[3] at docket number CP-36-640-2021 for a course of conduct directed at his next-door neighbors. Sentenced to consecutively-run, aggravate range sentences, Appellant challenges the sufficiency of the evidence and the discretionary aspects of his sentence. After careful review, we affirm based on the trial court's comprehensive opinion denying Appellant's post-sentence motions.

The underlying facts of the present case begin with Appellant's actions occurring from the months of May through September of 2020, when he persisted in behavior against his next-door neighbors that led to a series of charges filed against him. Specifically, a May 14, 2020, incident led police to charge him with summary harassment on May 19, 2020, a charge on which he was found guilty on July 31, 2020. Trial Court Opinion, 9/6/2022, at 1.

The September 21, 2020, charge of stalking under docket 4839-2020 was based on an escalation in Appellant's fixation with the neighbors manifesting with his "walking the property line between the two homes at night with a flash light; removing a wooden [survey] stake from the [family's] property without consent; throwing a brown substance over the back corner of the [family's] yard without consent, killing the grass; placing chairs on the property line and staring directly into the windows and backyard of the [family's] home; and shining bright lights and pointing security cameras into the [family's] home." TCO at 2. Particularly disturbing was an eyewitness

---

[2]  18 Pa.C.S.A. § 2709.1(a)(1).
[3]  18 Pa.C.S.A. § 3503(b)(1).

account of Appellant repeatedly swinging a sledgehammer into the ground while yelling that he hated one of the family members and, on another occasion, testimony that he followed the family's daughters in his car while flashing his high beams at them. N.T. (trial), Vol III, 2/11/22, at 535-550. Such accounts generated police and court orders directing Appellant to avoid any contact with the neighboring family or their property.

Appellant ignored these orders and admonitions on December 12, 2021, when he entered the neighboring family's property and made multiple trips onto the front porch, ostensibly to deliver packages in the scope of his employment with UPS. N.T. (trial), Vol II, at 263. The family watched from their security cameras as Appellant drove off before circling back, parking the vehicle near the family's driveway, staring at the family's front door with his window down. The daughter who opened the door to retrieve the packages testified that Appellant and she made eye contact multiple times before she finished the task. Only then, she testified, did Appellant "speed away." N.T. at 268, 552. For this conduct, Appellant was charged with stalking and defiant trespass at docket 640-2021.

On February 14, 2022, following a four-day consolidated trial, a jury found Appellant guilty on two counts of stalking and one count of defiant trespass. On May 2, 2022, the trial court, proceeding with the benefit of a pre-sentence investigation report, imposed two aggravated range guideline sentences of five and on-half to 11 months' incarceration, and ordered that

they run consecutively, for an aggregate sentence of 11 to 22 months' incarceration.

On May 12, 2022, Appellant filed a timely post-sentence motion positing that the verdict was against the weight or, in the alternative, the sufficiency of the evidence, and that the court abused its sentencing discretion in imposing manifestly excessive, aggravated range sentences. By order of September 6, 2022, the trial court denied Appellant's post-sentence motion. This timely appeal follows.

Appellant raises the following two issues for this Court's consideration:

I.      Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [Appellant] was guilty of Count 1, Stalking, pursuant to 18 Pa.C.S.A. § 2709.1 on docket 640-2021 where there was insufficient evidence that [Appellant] acted with the intent to place the victims in reasonable fear of bodily injury or cause substantial emotional distress?

II.     Did the trial court abuse its discretion by imposing sentences on both dockets at the top of the aggravated ranges of the sentencing guidelines without acknowledging it was doing so or providing sufficient justification for doing so and further abused its discretion by imposing said sentences consecutively resulting in a sentence that was so manifestly excessive to constitute too severe a punishment and was not consistent with the protection of the public, the gravity of the offenses and the rehabilitative needs of Mr. Wainman?

Brief for Appellant, at 6-7.

After reviewing the parties' briefs, the relevant case law, and the record on appeal, we rely on the cogent and comprehensive September 6, 2022, opinion authored by the Honorable David L. Ashworth, President Judge of the

Court of Common Pleas of Lancaster County, to affirm Appellant's judgment of sentence. *See* Post-Sentence Motions Opinion, 9/6/22, at 3-14 (finding verdict supported by sufficient evidence), 16-21 (imposing consecutively-run sentences in the aggravated guideline range did not reflect an abuse of discretion where the trial court explained its reasons for doing so on the record, which included, *inter alia*: Appellant's "utter fail[ure]" to acknowledge his guilt or indicate he acted inappropriately; his persistent blaming of everyone else but himself; his disturbing conduct in stalking his neighbors after the harassment conviction; his filing of complaints against his neighbors with the Attorney General's Office, who quickly cleared the neighbors of any wrongdoing; writing post-trial letters to the court and the district attorney seeking re-litigation and including private information about his neighbors, deemed inappropriate "deep digging" by the Commonwealth and the trial court; and maintaining an obsessive attitude toward his neighbors that justified the present sentence as an attempt to mitigate the possibility of immediate retaliation against the family; and Appellant was not entitled to a volume discount for his separate criminal acts).

We instruct the parties to attach a copy of President Judge Ashworth's decision in the event of further proceedings in the matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/26/2023

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA         :
                                      :
v.                                    :        Nos. 4839-2020 & 0640-2021
                                      :
THOMAS FRANCIS WAINMAN, JR.           :


**O P I N I O N**

BY:    ASHWORTH, P.J., SEPTEMBER 6, 2022

Defendant Thomas Francis Wainman, Jr., has filed a timely post-sentence

motion following his judgment of sentence on May 2, 2022. For the reasons set below,

this motion will be denied.

**I.    Background**

On May 19, 2020, Defendant was cited by the Northern Lancaster County

Regional Police Department ("NLCRPD") for summary harassment[1] of his neighbors,

the Weaver family, following an incident on May 14, 2020, and was subsequently found

guilty.[2] Following, from May 2020 to September 2020, Defendant engaged in, *inter alia*,

the following acts, after having been cited for harassment: walking the property line

between the two homes at night with a flash light; removing a wooden stake from the

Weavers' property without consent; throwing a brown substance over the back corner of

the Weavers' yard without consent, killing the grass; placing chairs on the property line

---

[1] 18 Pa.C.S.A. § 2709(a)(3).

[2] *See* MJ-02208-NT-132-2020. Defendant was subsequently found guilty on July 31, 2020.

and staring directly into the windows and backyard of the Weaver home; and shining bright lights and pointing security cameras into the Weaver home. *See* Complaint, Docket No. 4839-2020 ("No. 4839-2020"), Affidavit of Probable Cause, at 5-10.

On December 12, 2020, despite repeated orders from the court and police, Defendant entered the Weavers' property multiple times under the guise of delivering packages for UPS. *See* Complaint, Docket No. 0640-2021 ("No. 0640-2021"), Affidavit of Probable Cause at 2. Defendant was then subsequently charged with stalking and defiant trespass at No. 0640-2021. *Id.* at 3-4. On October 28, 2021, the Commonwealth consolidated the dockets pursuant to Rule 582(b)(2) of the Pennsylvania Rules of Criminal Procedure. *See* Notice of Intent to Consolidate, 10/28/2021.

On February 14, 2022, following a four-day jury trial, Defendant was found guilty of the following: one count of stalking[3] at No. 4839-2020, in addition to a second count of stalking[4] and one count of defiant trespass[5] on consolidated Docket No. 0640-2021.[6] Sentencing Order at No. 4839-2020; Sentencing Order at No. 0640-2021. On May 2, 2022, Defendant was sentenced to two terms of five-and-a-half to eleven months' incarceration, to be served consecutively. *Id.*

On May 12, 2022, Defendant filed a timely post-sentence motion asserting the evidence presented at trial by the Commonwealth was insufficient to sustain his convictions, or in the alternative, that his convictions are against the weight of the

---

[3] 18 Pa.C.S.A. § 2709.1(a)(1).

[4] 18 Pa.C.S.A. § 2709.1(a)(1).

[5] 18 Pa.C.S.A. § 3503(b)(1)(i).

[6] Docket Nos. 4839-2020 and 0640-2021 were consolidated for trial on October 28, 2021. *See* Notice of Intent to Consolidate, 10/28/2021.

2

evidence and that his aggravated range sentence is manifestly excessive. Post-Sentence Motion, at unenumerated 1-2. In response, the Commonwealth argues the jury, as factfinder, found that the evidence to be sufficient to prove all three charges beyond a reasonable doubt. Commonwealth's Answer to Defendant's Post Sentence Motion at unenumerated 1. The Commonwealth further asserts that this court reviewed the prepared Pre-Sentence Investigation ("PSI") Report, provided on the record explanation for the aggravated range sentence, and that the sentence was within statutory guidelines. *Id.* at unenumerated 2-3.

## II.    Discussion

### A.  Sufficiency of the Evidence

"A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Commonwealth v. Rivera**, 238 A.3d 482, 495 (Pa. Super. 2020) (*quoting* **Commonwealth v. Widmer**, 744 A.2d 745, 751-52, 560 Pa. 308 (2000)). "When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Id.* "Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law." **Widmer**, *supra* at 751 (*citing* **Commonwealth v. Santana**, 460 Pa. 482, 333 A.2d 876 (1975)).

3

> Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

**Commonwealth v. Lynch**, 242 A.3d 339, 352 (Pa. Super. 2020) (citations omitted).

Here, Defendant makes a bald assertion that the Commonwealth's evidence was insufficient to sustain a conviction for either crime charged, while failing to identify which element or elements of the crime or crimes have not been met. *See* Post-Sentence Mot., unenumerated 1-2. "The defendant in a court case shall have the right to make a post-sentence motion. All requests for relief from the trial court shall be stated with specificity and particularity. . . ." Pa.R.Crim.P. 720(B)(1)(a). Nevertheless,

> [a] person commits the crime of stalking when the person engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S.A. § 2709.1(a)(1). The statute further defines "course of conduct" as:

> [a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously. Acts indicating a course of conduct which occur in more than one jurisdiction may be used by any other jurisdiction in which an act occurred as evidence of a continuing pattern of conduct or a course of conduct.

18 Pa.C.S.A. § 2709.1(f). "An intent to place one in fear of bodily injury is but one *mens rea* that will sustain a conviction under § 2709(a)[]. Alternatively, a conviction may be upheld upon a showing that the accused intended to harass, annoy, alarm or cause

4

substantial emotional distress." **Commonwealth v. Miller**, 689 A.2d 238, 240 (Pa. Super. 1997).

As such, to sustain a conviction for stalking, the factfinder, here, the jury, must find that Defendant (1) engaged in a course of conduct or series of repeated acts, which (2) demonstrated intent to place the other in reasonable fear of bodily injury or to cause them substantial emotional distress, beyond a reasonable doubt. 18 Pa.C.S.A. § 2709.1(a)(1). During the Commonwealth's case in chief, 68 individual pieces of evidence were admitted, testimony from victims Daryl, Lori, Emily and Kiersten Weaver was given, in addition to testimony from neighbors and responding police officers, all of which corroborated the allegations made by the Weavers, and support Defendant's convictions of stalking beyond a reasonable doubt.

To prove the Defendant engaged in a course of conduct or series of repeated acts, the Commonwealth presented photographs and testimony showing the Defendant standing on, or near, the property line between the homes and staring directly into the Weavers' windows or back yard on multiple dates. *See* Notes of Testimony (N.T.), Trial at 89, Ex. 6; Id. at 110, Ex. 13; Id. at 145, Ex. 27; Id. at 147, Ex. 28; Id. at 159, Ex. 33; Id. at 261, Ex. 50; Id. at 355, Ex. 52; Id. at 356, Ex. 53; Id. at 358, Ex. 54; Id. at 362, Ex. 56; Id. at 363, Ex. 57; Id. at 517, Ex. 59; Id. at 520, Exs. 60, 61; Id. at 522, Exs. 62, 63, 64; and Id. at 526, Ex. 65.

On May 14, 2020, Ms. Lori Weaver and her daughters were in the backyard mulching, while Mr. Daryl Weaver was working in the garage. N.T., Trial at 73. After a time, Ms. Weaver went inside, visibly upset, and told Mr. Weaver that she saw the Defendant filming her and the girls while they were mulching. Id. at 73-74. Mr. Weaver

5

stated he was stunned, but preferred to give his neighbor the benefit of the doubt. Id. at 74. He told Ms. Weaver to go back outside and act like nothing was wrong, so that he could observe the situation from inside the house. Id. Mr. Weaver then observed the Defendant filming Ms. Weaver and their daughters from multiple angles for multiple minutes. Mr. Weaver took his own video of the Defendant filming the Weavers and called the police. Id. at 74, 77.

Mr. Weaver testified that during Memorial Day weekend in 2020, his daughters were swimming in the pool in their back yard. N.T., Trial at 102. During this time, Mr. Weaver observed the Defendant standing at a portion of the fence separating Defendant's back yard from the Weavers' and staring through the lattice into the pool. Id. at 102-103. Mr. Weaver observed the Defendant do this multiple times, and on this occasion decided to take a video of Defendant staring into the pool through the lattice, and notified the police. Id. at 103.

On multiple dates in May 2020, the Weavers' daughter, Emily Weaver, observed Defendant staring at her through her bedroom and bathroom windows. On May 1, 2020, Emily looked out her bedroom window and saw the Defendant outside near the property line, staring at her through her bedroom window, and took a photograph. N.T., Trial at 355. On May 6, 2020, Emily again captured a photograph of Defendant staring into her bedroom window, looking directly at her. Id. at 356. On May 12, 2020, Emily was in her bathroom, directly next to her bedroom, and caught the Defendant staring at her through the bathroom window and took a photograph. All instances involving Emily Weaver were reported to law enforcement. Id. at 359.

6

Mr. Weaver testified that he measured the distance from the property line to the Weaver home to be approximately sixteen feet to the living room windows, and twenty-four to twenty-six feet, from other points of the property. N.T., Trial at 165. On May 14, 2020, the Weavers reported multiple instances of disturbing behaviors from Defendant to Officer Wildberger. Id. at 84-85. After the officer left, Defendant immediately continued his behavior. Id. at 85. The Commonwealth presented photographs and testimony showing Defendant placed a chair on or about the property line between the homes, and sat facing the Weavers home, staring into the windows or back yard on multiple occasions.

> Commonwealth: All right. After Officer Wildberger left, did the defendant do anything once the police officers left?
>
> Mr. Weaver: Oh, yeah.
>
> Commonwealth: Okay. And at that time, what did the defendant do after the police officers left?
>
> Mr. Weaver: He took chairs, outdoor chairs, and put them along the property line closest -- as close as he could get to our house. Then over the next several, I would say, weeks, they would -- him and his wife would sit there just -- I don't know what they were doing. They would just sit there.

Id. at 85-86. *See also* Id. at 86, Exs. 4 & 5; Id. at 93, Exs. 7 & 8; Id. at 101, Ex. 12; and Id. at 238, Exs. 46, 47 & 49.

The Commonwealth also presented photographic and testimonial evidence that Defendant shined lights and pointed security cameras into the Weavers' home and back yard, further showing Defendant engaged in a course of conduct or series of repeated acts. N.T., Trial at 126, Exs. 16-21; Id. at 230, Exs 42 & 43. On June 15, 2020, Defendant began shining spotlights into the Weaver home from inside his home. Id. at

7

226-27. Ms. Weaver testified that she took photographs from inside her home to show the effect of the spotlight from her bedroom and her daughter Kiersten's bedroom, and explained that even with black out curtains, the lights were too bright to sleep. Id. at 235-37.

> Well, that was the one from dusk until dawn. And, I mean, I know at one point I had gotten up at, like, 2:00 in the morning because, like, it's just so bright. I mean, we got blackout curtains and stuff like that, but I was so frustrated that I took a picture of it. Yeah, just the ridiculousness and the fact that there's just no reason.

Id. at 232. Ms. Weaver further testified that Defendant would shine the lights every night "from dusk to dawn." Id. at 237.

On or around June 24, 2020, the Weavers noticed Defendant had mounted security cameras to his home and pointed them directly at the Weavers' home. N.T., Trial at 123. At that time, Mr. Weaver took photographs of the three cameras he saw pointing at his house, and later notified police. Id. After Defendant and his family moved, the new owners showed the Weavers that there were actually four cameras, and confirmed that they were all pointed at the Weavers' house. Mr. Weaver also took pictures of the cameras and/or camera mounts at this time. Id. at 123-24.

The instances outlined herein are merely a sample of the course of conduct engaged in by Defendant for more than half a year, as required for the first element of stalking. 18 Pa.C.S.A. § 2709.1. As mentioned previously, a course of conduct is "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." 18 Pa.C.S.A. § 2709.1(f). From May to December 2020, Defendant demonstrated an alarming commitment to his course of conduct, which continued after repeated warnings from police and two Magisterial District Court Judges

to stop any and all interactions involving the Weavers, and the Defendant simply refused.

Concerning the second element of stalking, Defendant undoubtedly demonstrated his clear intent to place the Weavers in reasonable fear of bodily injury or to cause them substantial emotional distress. 18 Pa.C.S.A. § 2709.1(a)(1). Defendant has offered no reason, excuse, or explanation for his actions, aside from outright denial, asserting that the Weavers misunderstood what he was doing, or insisting it was not his intent to cause emotional distress. Defendant has expressed zero remorse, nor offered a single apology for the obvious harm he caused up and through his sentencing hearing. N.T., Sentencing at 38. Defendant continually and repeatedly took actions which could reasonably serve no other purpose except to harass, annoy, alarm, and cause substantial emotional distress to the Weaver family, and unfortunately, Defendant was very successful. **Miller**, 689 A.2d at 240.

Mr. Weaver described Defendant's actions as "a death by a thousand cuts." N.T., Trial at 144. While Ms. Weaver described the impact of Defendant's conduct as, "It's like a huge ball of, like, just all kinds of emotion. It felt like constant torment. Just like -- and for years. Like years, literally. It's just been horrible." Id. at 279. As a result of Defendant's conduct, the Weaver children no longer feel safe, and the family was forced to implement safety and emergency plans:

> Commonwealth: Did you put into place a plan for your daughters as to whether they were allowed to leave the house by themselves?
>
> Mr. Weaver: Yeah. They weren't allowed to. They had to stay in pairs and go to work. We ended up monitoring or making them actually let us know when they're at work.

9

> We have a thing where we can see their location and then we make them text us and that's -- that's pretty sad because my daughter -- you know, my oldest daughter is a 22-year-old. She just turned 23. She's a 23-year-old woman. But she's my daughter and I want to know if she's safe. So we ended up putting those plans in place.

> \* \* \*

> Mr. Weaver:    I made all my kids give me their cell phones. So the way I have it set up, when they get toward -- like near our house, within a certain radius, it turns on our front porch light. And it turns on our kitchen above our sink light. So I know that they're lit up when they get home.

Id. at 169-71.

Moreover, Emily Weaver testified that Defendant's conduct "consumed her life." N.T., Trial at 370. "My room is dark most of the day. I've been losing sleep. I've been losing sleep for the last couple of years just because I always have the feeling that I'm being watched or being talked about outside of my own house. And there's been no comfort in my home." Id. at 374. Kiersten Weaver testified that she lives in a "constant state of fear." Id. at 555. "I don't like to leave work alone. I walk along the street with my keys in my hands if I'm leaving work alone late at night. I'm constantly looking over my shoulder to the point that it's almost like it's paranoia. It's every aspect of my life." Id. at 556.

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, I conclude that there was sufficient evidence to establish that Defendant engaged in a course of conduct, or series of repeated acts, which demonstrated intent to place the Weavers in reasonable fear of bodily injury or to cause them substantial emotional distress. Therefore, the evidence is sufficient as a matter of law. 18 Pa.C.S.A. § 2709.1(a)(1).

10

Next, Defendant was convicted of one count of defiant trespass. "A person commits defiant trespass when, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: (i) actual communication to the actor." 18 Pa.C.S.A. § 3503(b)(1)(i). Thus,

> i]n order to establish a violation it is necessary to prove that the defendant: 1) entered or remained upon property without a right to do so; 2) while **knowing** that he had no license or privilege to be on the property; and 3) after receiving direct or indirect notice against trespass.

**Commonwealth v. Wanner**, 158 A.3d 714, 718 (Pa. Super. 2017) (emphasis in original) (*quoting* **Commonwealth v. Namack**, 663 A.2d 191, 194 (Pa. Super. 1995)). As with the convictions for stalking, Defendant does not offer insight as to how the evidence was insufficient to support his conviction for defiant trespass with any specificity or particularity as required by Pa.R.Crim.P. 720(B)(1)(a). Nonetheless, the evidence of record is clear and meets each element of defiant trespass.

From May through December of 2020, Defendant entered onto the Weavers property without consent on multiple occasions. On July 16, 2020, Mr. Weaver observed Defendant throwing a brown substance over newly grown grass in the Weavers' yard, without consent. N.T., Trial at 138-39. Mr. Weaver was able to film Defendant throwing the substance and called the police. Id. at 139. The following day, Defendant was cited for criminal trespass, and on July 31, 2020, Defendant was before Magisterial District Judge (MDJ) Edward Tobin. Id. Defendant was convicted of summary harassment and summary criminal trespass resulting from the May 14, 2020, and July 16, 2020, incidences. Id. At that time, Defendant was told by MDJ Tobin to stop all contact with Weavers. Id. at 464; Exs. 25 & 26.

11

On August 1, 2020, one day after his conviction for summary harassment and summary criminal trespass, Defendant thought it prudent to speak to Ms. Weaver in the back yard. N.T., Trial at 255. Ms. Weaver testified to the incident:

> So, July 31st, the date before this happened, we had had a hearing at Judge Tobin's in Lititz that he was found guilty of trespassing and harassment from, like, other stuff that he was doing all along. And then the very next day, I'm out, like, cooking dinner on the grill and he yells – he was told not to have any contact with us, first of all. He yells over, I hope you're having a wonderful day. I let it go, just let it go. And then he said, Mrs. Weaver, can I come on your property and put some bricks down? And I was like, Judge Tobin just told you yesterday, you're not to, like, have contact with us. Like, leave us. And then he starts. Like, he goes on these rants then and just starts yelling and screaming and saying, like, what an awful person I am, just get over it, like, all kinds of just -- I just wanted -- want nothing to do with him. Just leave us alone.

Id. Because Defendant's rant was loud and went on for some time, a member of the Weaver household was able to hear him from her bedroom inside the Weaver home and was able to film Defendant's actions. Id. at 256. The Weavers reported the incident and showed the video to police. Id.

On August 7, 2020, Mr. Weaver observed Defendant reach over the property line into the Weavers yard, remove one of multiple wooden surveyor stakes, and throw it in the trash in his own yard. Mr. Weaver filmed the incident and reported it to the police. N.T., Trial at 142-44. On August 21, 2020, Defendant again spoke to Ms. Weaver while outside, and asked her if he could come on to her property to mulch. Id. at 254.

On November 2, 2020, Defendant appeared before MDJ Tony S. Russell for a preliminary hearing.[7] At that time, Judge Russell told the Defendant again that he was not have no contact with the Weavers or their property. N.T., Trial at 14, 618-19. On November 14, 2020, Ms. Weaver was in her kitchen watching a squirrel hang upside

---

[7] See MJ-02207-CR-185-2020.

12

eating the seeds out of a sunflower in her garden. Id. at 261. She thought it was adorable and decided to film it, and as she did, she saw Defendant standing near the porch on her property, staring into the family room windows. She took a photo of Defendant staring in and later informed police. Id. at 261.

On December 12, 2020, Officer Twaddell of the NLCRPD was on patrol in the area of Knightsbridge Road and Queens Gate Road in Lititz[8] and observed Defendant standing next to a vehicle with its emergency lights flashing. See Complaint, Docket No. 0640-2021, Affidavit of Probable Cause, at 7-9. Officer Twaddell briefly engaged in friendly conversation with Defendant who informed the officer that he worked for UPS and was delivering packages in the area. Id. at 8.

Shortly thereafter, Mr. and Ms. Weaver were in their kitchen when they received a notification from their security cameras that there was activity at the front door. N.T., Trial at 263. Ms. Weaver opened the application on her phone which allowed her to view all of their security cameras, and she saw Defendant at her front door leaving a package on her porch. She then watched Defendant making multiple trips from the street to the Weaver front porch, ostensibly delivering packages. Id. at 265. On her camera, she observed Defendant drive off, but circle back, and then park near the Weavers' driveway, staring at the Weavers' front door, with his window down. Id. at 267. While Ms. Weaver watched Defendant stare at the home, Kiersten Weaver brought in the packages from the front porch. Id. at 268. Kiersten stated she made eye contact with Defendant multiple times, and when she was finished bringing in the packages, she saw Defendant speed away. Id. at 268, 552.

---

[8] Where Defendant and the Weavers resided at the time, respectively.

13

The absolute latest date Defendant could claim that he was unaware that he did not have consent to enter or remain on the Weaver property was July 31, 2020. No less than five times after being convicted for criminal trespass did Defendant enter or remain on the Weavers' property without right, privilege, license, or consent to do so, all while knowing, without question or doubt, that he had no right, after receiving direct notice against trespassing from two judges. The evidence admitted at trial satisfied every element of defiant trespass, and as such is sufficient as a matter of law to uphold Defendant's conviction. **Wanner**, 158 A.3d at 718; 18 Pa.C.S.A. § 3503(b)(1)(i).

In a jury trial, the jury is the sole arbiter of fact and credibility: "It [i]s within the province of the jury as factfinder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence...." **Commonwealth v. Charlton**, 902 A.2d 554, 562 (Pa. Super. 2006). Here, the jury obviously found the evidence admitted and the testimony given credible, and in doing so found that the evidence was sufficient to prove Defendant committed two counts of stalking and one count of defiant trespass beyond a reasonable doubt. Defendant's claim that there was insufficient evidence to support any of his convictions is without merit and must be denied.

### B. Weight of the Evidence

In the alternative to his sufficiency claim, Defendant argues that his convictions are against the weight of the evidence. *See* Post-Sentence Motion at unenumerated 1-2. A claim that the verdict is contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict, but nevertheless contends that the trial

14

judge should find the verdict so shocking to one's sense of justice and contrary to the evidence as to make the award of a new trial imperative." **Commonwealth v. Robinson**, 834 A.2d 1160, 1167 (Pa. Super. 2003). *See also* **Commonwealth** v. **Thompson**, 106 A.3d 742, 758 (Pa. Super. 2014). Our Supreme Court has summarized the standard to be applied in addressing a "weight of the evidence" issue:

> A weight of the evidence claim is primarily directed to the discretion of the judge who presided at trial, who only possesses 'narrow authority' to upset a jury verdict on a weight of the evidence claim.... Assessing the credibility of witnesses at trial is within the sole discretion of the fact-finder.... A trial judge cannot grant a new trial merely because of some conflict in testimony or because the judge would reach a different conclusion on the same facts, but should only do so in extraordinary circumstances, 'when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.'... On review, an appellate court determines whether the trial court abused its discretion based upon review of the record; its role is not to consider the underlying question in the first instance.

**Commonwealth v. Blakeney**, 596 Pa. 510, 522-23, 946 A.2d 645, 652-53 (2008) (citations omitted). The appellate court reviews the exercise of discretion by the trial court, "not . . . the underlying question of whether the verdict is against the weight of the evidence." **Commonwealth** v. **Clay**, 619 Pa. 423, 432, 64 A.3d 1049, 1055 (2013) (citation and emphasis omitted). Application of these concepts to the facts presented at trial requires this court to reject Defendant's challenge to the weight of the evidence in this case.

In this alternative assertion, Defendant has also failed to plead with specificity or particularity his claim that his convictions are against the weight of the evidence as required by Pa.R.Crim.P. 720(B)(1)(a). This court will not hypothesize as to which evidence Defendant believes should have more or less weight. However, "a weight of

the evidence challenge contests the weight that is accorded the testimonial evidence." **Commonwealth v. Morgan,** 913 A.2d 906, 909 (Pa. Super. 2006) (*citing* **Armbruster v. Horowitz,** 744 A.2d 285, 286 (Pa. Super.1999)).

After thorough review of the testimonial evidence, this court can find no issues concerning the credibility of the testimony given by the Weaver family, their neighbors, or law enforcement officers. Each witness gave clear testimony concerning the actions taken by Defendant to harass, stalk, and trespass on the Weaver family and their property. The defense did not offer or elicit testimony contradicting the testimony of the witnesses called by the Commonwealth. All of the testimony elicited by the Commonwealth corroborated the Weaver family's allegations against Defendant, and there is nothing of record to suggest that any testimony was not credible. Finally, the conclusions reached by the jury were reasonably based in the law and the evidence of record admitted by the Commonwealth, and as such, none of the verdicts could serve to shock a person's sense of justice. The jury in this case was free to believe that all, some, or none of the testimony at trial was credible, and in doing so determined that Defendant was guilty of two counts of stalking and one count of defiant trespass, all beyond a reasonable doubt. **Commonwealth v. Cruz,** 919 A.2d 279, 281 (Pa. Super. 2007). Defendant's claim that his convictions are against the weight of the evidence, is without out merit and denied.

### C. Abuse of Discretion in Sentencing

Defendant challenges only the discretionary aspect of his sentencing. I begin by noting that Pennsylvania law provides trial courts with broad discretion in sentencing

16

criminal defendants "because of the perception that the trial court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." **Commonwealth v. Hoch**, 936 A.2d 515, 519 (Pa. Super. 2007) (*quoting* **Commonwealth v. Ward**, 524 Pa. 48, 52, 568 A.2d 1242, 1243 (1990)). That discretion, however, is not without its limitations. The Pennsylvania Supreme Court has instructed: "[A] trial court must 'follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.'" **Commonwealth v. Mouzon**, 571 Pa. 419, 424, 812 A.2d 617, 620 (2002) (footnote omitted). *See* 42 Pa. C.S.A. § 9721(b). A trial court will be found to have abused its discretion only if "the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." **Commonwealth v. Hardy**, 939 A.2d 974, 980 (Pa. Super. (2007).

On May 2, 2022, Defendant was sentenced to two terms of five-and-a-half to eleven months' incarceration, to be served consecutively.[9] Sentencing Order – No. 4839-2020; Sentencing Order – No. 0640-2021. In his final post-sentence claim, Defendant asserts this court abused its discretion in sentencing because five-and-a-half to eleven months' incarceration is an aggravated range sentence, thus manifestly excessive, and that the court abused its discretion in having issued consecutive sentences from separate dockets. *See* Post-Sentence Motion at 2. Defendant is mistaken.

---

[9] The sentences of record are specific to the stalking charges, 18 Pa.C.S.A § 2709.1(a)(1). No further penalty was given by this court for the defiant trespass conviction.

17

"To determine the suggested sentence for each conviction, sentencing courts must determine the defendant's prior record score and. . . the [offense gravity score] OGS of each offense. Section 303.15 sets forth the OGS for every offense contained within the Pennsylvania Crimes Code." **Commonwealth v. Hand**, 252 A.3d 1159, 1168 (Pa. Super. 2021) (*citing* 204 Pa. Code §§ 303.2(a) and 303.15)). Here, Defendant had a prior record score of zero coming into sentencing. N.T., Sentencing at 3. Stalking, a first-degree misdemeanor, has an OGS of four. *See* Guideline Sentence Form, 7/27/2022, Nos. 4839-2020 & 0640-2021. Pursuant to 204 Pa. Code § 303.16, a prior record score of zero, with an OGS of four, has a standard range sentence of zero ("restorative sanctions" in lieu of incarceration) to three months' incarceration, with plus or minus three months for an aggravated or mitigated sentence, respectively. Id. As such, an aggravated range sentence for stalking is three to six months' incarceration. 204 Pa. Code § 303.16. Defendant is correct in asserting his sentence falls within the aggravated range. Defendant is incorrect in asserting an aggravated range sentence is, without more, an abuse of discretion.

The sentencing court is not bound to the sentencing guidelines, nor is it bound to issue a sentence within the standard sentence range. Nonetheless, "[i]n every case in which the court imposes a sentence for a felony or misdemeanor. . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." 18 Pa.C.S.A. § 9721(b). At sentencing, this court explained on the record, at length the reasons for Defendant's sentence as issued. First, Defendant utterly failed to acknowledge his guilt or culpability for his actions, or to indicate in any meaningful way that be believed his actions were in

18

any way inappropriate, and he continued, up and through his sentencing hearing, to blame everyone for his problems, except himself. N.T., Sentencing at 38-39.

Secondly, Defendant's conduct after his convictions shows his continued commitment to stalking the Weavers, and to his continued denial of all responsibility. During Defendant's sentencing hearing, the Commonwealth informed the court that in March of 2021, Defendant filed complaints against the Weavers with the Pennsylvania Attorney General's Office alleging, *inter alia*, the Weavers committed perjury during his trial. N.T., Sentencing at 31-32. The Weavers were quickly cleared of any wrong doing by the Attorney General's Office. Id. Further, after trial, Defendant wrote multiple letters to the court, the District Attorney's Office, and law enforcement attempting to relitigate his case. Id. at 33. The letters included private information about the Weavers and some concerning events that took place after Defendant's trial ended, strongly indicating that Defendant engaged in what the Commonwealth referred to as "deep digging" into the Weaver family after his conviction. Id. at 32-33. After warnings from police, orders from the court, and unanimous convictions, Defendant has unequivocally refused to stop his obsessive behavior. Id. at 33. This court holds there is reasonable probability that, if Defendant's sentence was in the mitigated or standard range, Defendant's behavior would not only continue, but could escalate beyond stalking. His sentence reflects an attempt to mitigate that possibility. Id. at 40.

Defendant has not indicated with specificity or particularity why he believes his sentence is manifestly excessive, only that it is. *See* Post-Sent Motion at unenumerated 2. However, the record does not show that this court "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a

19

manifestly unreasonable decision." **Hardy**, 939 A.2d at 980. A sentence that upwardly deviates from the standard guideline sentence serves to ensure public safety, and to respect the incredible and lasting impact his crimes had, and continue to have, on the Weaver family.

Regarding Defendant's claim that this court abused its discretion in issuing consecutive sentences, Defendant has not provided any explanation or legal authority to support this claim. Although Pennsylvania's system stands for individualized sentencing, the court is not required to impose the "minimum possible" confinement. **Commonwealth v. Wall**, 592 Pa. 557, 570, 926 A.2d 957, 965 (2007). In fact, our appellate courts have expressed disapproval of routinely running sentences concurrently lest criminals receive a "volume discount" for their separate criminal acts. See **Commonwealth v. Austin**, 66 A.3d 798, 808 (Pa. Super. 2013) (*citing* **Commonwealth v. Hoag**, 445 Pa. Super. 455, 665 A.2d 1212 (1995) (stating an Defendant is not entitled to "volume discount" for his crimes by having all sentences run concurrently)). Consecutive sentences will be overturned only if the sentence imposed was "clearly unreasonable." **Commonwealth v. Fiascki**, 886 A.2d 261, 264 (Pa. Super. 2005). "A sentence is 'clearly unreasonable' if it 'violates the requirements and goals of the [Sentencing] Code.'" Id.

The relevant statute governing sentencing states: "In determining the sentence to be imposed the court shall . . . consider and select one or more of the following alternatives, and may impose them *consecutively or concurrently*." 42 Pa.C.S.A. § 9721(a) (emphasis added). The sentencing alternatives include: "(1) An order of probation. . . . (3) Partial confinement [and] (4) Total confinement. . . ." Id. Long

20

standing precedent recognizes that 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed, upon consideration of the individual circumstances concerning the defendant and the many crimes he committed. *See* **Commonwealth v. Johnson**, 961 A.2d 877, 880 (Pa. Super. 2008) (*citing* **Commonwealth v. Marts**, 889 A.2d 608, 612 (Pa. Super. 2005)).

This court's sentencing decision resulted from a dispassionate, balanced and scrupulous review of the entire record in this case. Defendant has failed to offer any argument that the sentence imposed is other than "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). As Defendant's sentence was neither so manifestly excessive as to constitute too severe a punishment nor clearly unreasonable given the nature of the crimes committed and the circumstances of the cases, his motion to reconsider the sentence must be denied.

## III.   Conclusion

For the reasons set forth above, Defendant Thomas Francis Wainman's post-sentence motion will be denied.

Accordingly, I enter the following:

21

**IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA**
**C R I M I N A L**

COMMONWEALTH OF PENNSYLVANIA    :
         :
v.                         :        Nos. 4839-2020 & 0640-2021
         :
THOMAS FRANCIS WAINMAN, JR.    :

### ORDER

AND NOW, this 6th day of September, 2022, upon consideration of Defendant Thomas Francis Wainman's post-sentence motion, and the Commonwealth's response thereto, it is hereby ORDERED that said motion is DENIED.

Pursuant to Pa.R.Crim.P. 720, this Court advises Defendant that he has the right to appeal from this Order. Defendant shall have 30 days from the date of this final Order to appeal to the Superior Court of Pennsylvania. Failure to appeal within 30 days will result in the loss of appellate rights. Defendant is further advised that he has the right to assistance of counsel in the preparation of the appeal. If Defendant is indigent, he has the right to appeal *in forma pauperis* and to proceed with assigned counsel as provided in Pa.R.Crim.P. 122.

BY THE COURT:

DAVID L. ASHWORTH
PRESIDENT JUDGE

Copies:    Assistant District Attorney Janie A. Swinehart
            Michael V. Marinaro, Esquire