689 A.2d 238

**COMMONWEALTH of Pennsylvania**

v.

**Warren R. MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 12, 1996.

Filed Jan. 16, 1997.

536

Wayne E. Bradburn, Jr., Bellefonte, for appellant.

Anthony G. Deboef, Assistant District Attorney, Bellefonte, for the Commonwealth, appellee.

Before BECK, TAMILIA and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

As Neil Sedaka so aptly observed, breaking up is hard to do. This is especially true when your former lover harasses and stalks you. Lisa McDonald found herself in this frightening situation in June of 1995, after the less than amicable dissolution of her relationship with Warren Miller, appellant herein. Eventually, Mr. Miller's escapades prompted Ms. McDonald to obtain a Protection From Abuse (PFA) order against appellant.

For ten months following the issuance of the PFA order, Ms. McDonald was able to live with a feeling of greater safety, secure in the knowledge that appellant was prohibited from initiating contact with her for nefarious reasons. Then, in April of 1996, while utilizing her day off from work to do mundane errands, her sense of security was shattered.

After leaving her residence on that spring morning, Ms. McDonald observed appellant sitting on his motorcycle approximately 500 yards from her home. Alert and alarmed, Ms. McDonald kept a close watch in her rear-view mirror. From this vantage point, Ms. McDonald watched as appellant followed her on his motorcycle until Ms. McDonald entered a

shopping plaza. After making a brief stop at the plaza, Ms. McDonald returned to her car. At this time, she witnessed appellant directly behind her, seated on his motorcycle. Ms. McDonald pulled out of the plaza parking lot and drove to a convenience store just across the street. Again, appellant did not follow her into the parking lot, but proceeded onward down the street. As she was returning home, Ms. McDonald spotted appellant yet again, parked in the same original spot near her home.

Shaken by this alarming turn of events, Ms. McDonald called the local police, who quickly dispatched an officer to the area in which appellant was parked. The officer approached appellant and explained that his presence was panicking some local residents. Appellant agreed to leave and, without further ado, drove away.

Some time later, the officer called Ms. McDonald and told her that he would be parked in a funeral home lot near her house. He advised Ms. McDonald that he would watch for appellant if she drove her car by that location. Soon thereafter, appellant was arrested after the officer witnessed him follow Ms. McDonald past the funeral home.

On April 26, 1996, an indirect criminal contempt hearing was held before the Honorable Charles C. Brown, Jr. Following testimony and argument, appellant was found guilty of violating the provisions of the PFA order by harassing and/or stalking Ms. McDonald. Judge Brown then sentenced appellant to a period of five days imprisonment. With credit for time served, appellant was immediately released from custody.

On appeal, appellant argues that: (1) the Commonwealth failed to sustain its burden of proof with respect to the intent element of harassment and/or stalking and (2) the Protection From Abuse Order was unconstitutionally overbroad and impinged upon appellant's constitutional right to travel.

■ With respect to appellant's first issue, our standard of review is well settled. This Court must view the evidence and all reasonable inferences derived therefrom in the light most favorable to the Commonwealth, as verdict winner, and deter-

mine whether sufficient evidence was presented to prove each element of the crime beyond a reasonable doubt. *See, e.g., Commonwealth v. Berkowitz,* 537 Pa. 143, 147, 641 A.2d 1161, 1163 (1994); *Commonwealth v. Smolko,* 446 Pa.Super. 156, 162, 666 A.2d 672, 675 (1995).

██ Appellant maintains that, although he was in close proximity to Ms. McDonald four times within one afternoon, intent to harass, annoy, alarm, cause reasonable fear of bodily injury or substantial emotional distress cannot be inferred.[1] This argument is purportedly supported by the fact that appellant offered innocuous explanations for his actions on the day in question, that there was no actual or attempted bodily harm caused and that the victim did not testify that she suffered severe emotional distress as a result of the altercations.

██ Addressing the initial averment, that appellant provided benign explanations for why he was in the same area as the victim on the date in question, we find that this in no way obviates a finding that appellant possessed the requisite criminal intent. Indeed, this proffer runs contrary to the very standard of review that this Court must utilize in assessing appellant's claim; for in finding that appellant acted with the necessary intent, the trial judge must have concluded that appellant's narration was baseless.[2]

1. We note that the trial judge did not specify whether appellant violated 18 Pa.C.S.A. § 2709(a) harassment, or (b) stalking. Rather, Judge Brown held that appellant's actions were in violation of the PFA order, which prohibited both activities. We will therefore scrutinize appellant's conduct with regard to both penal provisions. The crime of harassment requires proof that the actor intended to harass, annoy or alarm. The intent element of stalking requires proof that the actor either intended to place the victim in reasonable fear of bodily injury or to cause substantial emotional distress.

2. To the extent that appellant requests this Court to re-weigh the evidence presented at the hearing, we note that credibility determinations are the sole province of the fact-finder. It is not proper, absent extraordinary circumstances, for an appellate Court to impose an alternate version of factual events in substitution for those found in the proceedings below.

■ Next, appellant claims that the *mens rea* element was not proven because at no time was there actual physical harm or the threat thereof. This argument is ludicrous. An intent to place one in fear of bodily injury is but one *mens rea* that will sustain a conviction under § 2709(a) and (b). Alternatively, a conviction may be upheld upon a showing that the accused intended to harass, annoy, alarm or cause substantial emotional distress. Therefore, we find the fact that appellant did not attempt to approach or physically harm the victim to be of no consequence.

■ Finally, appellant claims that his lack of intent may be gleaned from the testimony of the victim that she had an "uneasy feeling" about the events in question. Even accepting as true that the victim's distress was not severe, we are unpersuaded that this precludes a finding that appellant's intent was to cause such a reaction. We are aware of no caselaw which holds that the extent of a person's intent may be measured from the ultimate effect upon the victim. Furthermore, as previously stated, the intent to annoy, harass or alarm will also serve to sustain a conviction under § 2709.

■ In sum, our review of the evidence, viewed in the light most favorable to the Commonwealth, amply supports appellant's indirect criminal contempt conviction. Within the short time span of several hours, appellant came into contact with the victim five times. These encounters encompassed both residential and commercial environments, and continued even after the police made an initial contact with appellant. While the occasional encounter may possibly be explained as an innocent and random happenstance, the present facts do not support such a finding.

Appellant's second issue presents this Court with the opportunity to determine whether the PFA order issued against him was unconstitutionally overbroad and prohibitive of protected activities. Additionally, appellant maintains that the PFA

order impinged upon his constitutionally protected right to travel.[3]

■ We will first consider appellant's averment that the PFA order impinged upon his federal constitutional right to travel. After careful review of the applicable caselaw, we find that appellant has failed to properly state a claim for our Court to review.

■ The federal constitutional right to travel guarantees and protects the ability to migrate **from one state to another** and to receive the rights and benefits of the newly adopted state without obtrusive residency requirements. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (invalidating the denial of welfare benefits to residents who had not resided in a jurisdiction for at least one year); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (invalidating the denial of non-emergency medical care to indigent persons who had not resided in a jurisdiction for at least one year.)

Instantly, appellant has alleged that the PFA order infringed upon his "constitutional right to travel within the Commonwealth of Pennsylvania." Appellant's brief at 18. Appellant has cited no caselaw, nor have we discovered any, which holds that there is a federal constitutional right to travel throughout Centre County, Pennsylvania. Moreover, appellant has not alleged that the PFA order in any manner impeded his right to interstate migration. We therefore decline to address appellant's claim that the provisions of the PFA order unconstitutionally denied his right to travel.

■ Next, we consider whether the PFA order was unconstitutionally overbroad in that it criminalized legitimate, protected activities. At the outset, we note that properly enacted statutes enjoy a strong presumption of constitutionality. *See, e.g., Commonwealth v. Barud,* 545 Pa. 297, 304, 681

---

**3.** In his argument, appellant has merged the issues of overbreadth and right to travel. These arguments present distinct inquiries with unique standards of review. Therefore, in the interest of providing a cogent analysis, we will address these issues separately.

A.2d 162, 165 (1996); *Commonwealth v. Swinehart,* 541 Pa. 500, 508, 664 A.2d 957, 961 (1995). Therefore, our standard of review is limited to a consideration of whether the legislation at issue is "clearly, palpably, and plainly in violation of the constitution." *Swinehart,* 541 Pa. at 508, 664 A.2d at 961.

■ When considering whether a statute is overbroad, and thus violative of due process guarantees, this Court must determine whether the challenged legislation gives a person fair notice of the type of activity that is prohibited. *Barud,* 545 Pa. at 304–05, 681 A.2d at 165. This encompasses an inquiry into the certainty and definitiveness of the statute in order to assess whether the average person would be able to identify forbidden conduct. *Id.*

Applying this test to the instant case, we find that neither the harassment nor the stalking provisions of the PFA order were unconstitutionally overbroad. The intent elements of both offenses, which appellant so vigorously challenged in the initial portion of his argument, obviate such a finding.

■ With respect to the harassment provisions of 18 Pa. C.S.A. § 2709(a), our Court held some time ago that the statute "requires the fact finder to infer a specific intent, and it specifies that the conduct must be of a non-legitimate nature—conduct which is not constitutionally protected." *Commonwealth v. Duncan,* 239 Pa.Super. 539, 549, 363 A.2d 803, 808 (1976).

■ Similarly, in the recent case of *Commonwealth v. Schierscher,* 447 Pa.Super. 61, 668 A.2d 164 (1995), we had occasion to consider the constitutionality of the stalking portion of § 2709 when faced with an overbreadth challenge. Therein, we held that "[t]he Stalking statute is quite clear that engaging in repetitive conduct aimed at an individual evidencing an 'intent' to evoke 'substantial emotional distress' is prohibited conduct." *Schierscher,* 447 Pa.Super. at 78, 668 A.2d at 172.

We therefore hold that the PFA order assessed against appellant, which provided the underlying corpus for the indi-

rect criminal contempt conviction, did not infringe upon appellant's constitutional right to due process.[4]

Indeed, the PFA order does not even prohibit appellant from merely being in the victim's presence. The essential factor which appellant has omitted from his argument, and which controls the outcome of this issue, is that appellant must act with the requisite intent in order to fall within the parameters of the PFA order.

Therefore, while we readily agree with appellant that he is at liberty to engage in the myriad of activities that are protected by the due process clause, we cannot acquiesce to the faulty logic that this in some manner implies a constitutional right to harass and stalk an innocent individual.

Judgment of sentence affirmed.

BECK, J., concurs in the result.

[4] We note with some distress the inexplicable absence from both parties' briefs of the cases of *Commonwealth v. Schierscher*, 447 Pa.Super. 61, 668 A.2d 164 (1995), and *Commonwealth v. Duncan*, 239 Pa.Super. 539, 363 A.2d 803 (1976). These cases contain binding precedent which are dispositive of the instant issue and should have been presented by the parties in their arguments. While we realize that our Court is free, and even obligated, to conduct its own independent legal research, this in no way invites the litigants to act in dereliction of their duties to the Court.