**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| MARGO L. ROYER | : | |
| Appellant | : | No. 1336 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 31, 2023
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000383-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| MARGO L. ROYER | : | |
| Appellant | : | No. 1337 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 31, 2023
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000547-2022

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:         **FILED: November 12, 2024**

Margo L. Royer ("Royer") appeals from the judgment of sentence imposed following her convictions for ten counts of harassment graded as third-degree misdemeanors.[1] After careful review, we affirm.

We summarize the evidence presented at Royer's jury trial. Royer and the victim, her administrative supervisor, Aaron Emhoff ("Emhoff"), worked

_____

[1] **See** 18 Pa.C.S.A. § 2709(a)(7).

at the Pennsylvania Department of Transportation ("PennDOT") office in Punxsutawney, Jefferson County. *See* N.T., Jury Trial, 4/18/23, at 18-19. On June 8, 2022, Royer received a written notice of a pre-disciplinary conference ("PDC") regarding a separate workplace issue.[2] *See id*. at 27-29. Royer became angry about the notice. *See id*. at 29. After Emhoff and her immediate supervisor, Matt Gaston, made several attempts to communicate with Royer inside the building as well as in her car, she left work that day, resulting in her suspension from her employment at PennDOT. *See id*. at 29-32.

Later that same day, Royer began sending unwanted and alarming texts to Emhoff. *See id*. at 32-33. That evening, Emhoff notified the local police about the texts from Royer. *See id*. at 33-34. Royer continued to text Emhoff, and the local police urged him to contact the Pennsylvania State Police due to concerns for his safety because of the number and content of the text messages. *See id*. at 34-35.

The next day, Emhoff spoke with Pennsylvania State Trooper Alexis Stitt ("Trooper Stitt") about the prior incident at PennDOT, and the unwanted texts from Royer. *See id*. at 35, 47, 128-29. On that day, Trooper Stitt spoke with

---

[2] Royer previously worked at the PennDOT Regional Traffic Management Center in Clearfield County. Her previous supervisor at that location reached out to Emhoff one week prior to June 8, 2022 to inform him that Royer "called his office looking for some documentation pertaining to some police activity from the previous year." N.T., Jury Trial, 4/18/23, at 27. This phone call resulted in the issuance of the PDC notice scheduling a conference with Royer for June 9, 2022. *Id*. at 28-29.

Royer by telephone and told her to have no contact at all with Emhoff. *See id*. at 47, 131-32. The following day, Royer sent additional text messages as well as four separate emails to Emhoff. *See id*. at 49-52, 132.

On June 17, 2022, Trooper Stitt filed a complaint at docket CP-33-CR-0000383-2022 ("Docket 383") asserting five counts of harassment against Royer: one count for the text messages and one count for each of the four emails. *See id*. at 133, 135, 202. On July 7, 2022, at the preliminary hearing for the charges at Docket 383, Emhoff reported that Royer had continued to text him despite verbal notice by Trooper Stitt not to contact him. *See id*. at 136-37. To ensure that Royer would cease contact, the magisterial district court placed a special condition on her unsecured bail: to have no contact with Emhoff. *See id*. at 136.

Despite the bail condition and verbal warning by Trooper Stitt, Royer continued to send repeated unwanted text messages to Emhoff days later. *See id*. at 82. On July 10, 2022, Royer sent an additional eight texts. *See id*. at 82-82, 137. On July 13, 2022, Royer sent two texts. *See id*. at 83, 137. Therefore, on July 19, 2022, Trooper Stitt filed a second complaint against Royer at docket CP-33-CR-0000547-2022 ("Docket 547") asserting ten counts of harassment.

Royer filed a recusal motion on April 5, 2023, arguing that the trial court judge, the Honorable John Henry Foradora, was biased because in the summer of 2022, his son worked in the Punxsutawney PennDOT office where this incident occurred. Royer further asserted that her friend, Denise Foradora

("Denise"), is Judge Foradora's first cousin and looked after Royer's house and cat over the years. *See* Royer's Recusal Motion, 4/5/23, at unnumbered 1. After a brief hearing, Judge Foradora denied Royer's recusal motion. *See* N.T., Hearing, 4/5/23, at 2-4; *see also* Trial Court Order, 4/5/23.

Prior to trial, the Commonwealth filed a motion to amend and consolidate the criminal informations as follows: (1) at Docket 383, to change the dates for the five counts of harassment to June 9 through July 7, 2022, and (2) at Docket 547, to reduce the charges from ten counts of harassment to five counts of harassment, and to change the dates of the offenses to July 10 through July 25, 2022. *See* Commonwealth's Motion for Consolidation and Joinder of Information and Amend Information, 4/6/23, at unnumbered 1-2; *see also* Trial Court Order, 4/10/23, at unnumbered 1; Commonwealth's Motion to Amend Information, 4/13/23, at unnumbered 1-2; and Trial Court Order, 4/14/23, at unnumbered 1. The trial court granted the Commonwealth's motions.

The charges against Royer proceeded to a consolidated jury trial. The Commonwealth called two witnesses, Emhoff and Trooper Stitt, to testify. *See* N.T., Jury Trial, 4/18/23, at 16-140. Emhoff testified that in 2022 Royer sent him 264 text messages over a period of approximately six to seven weeks, following the June 8, 2022 workplace incident that resulted in her suspension and eventual termination from employment with PennDOT. *See id*. at 33, 34, 35-49, 53-87, 88, 185. The Commonwealth presented testimony and evidence that Royer repeatedly sent these unwanted texts to Emhoff, ignoring

Trooper Stitt's instructions not to contact him and despite signing the bail conditions, which included an order that she not contact Emhoff. *See id*. at 47, 131-32, 136-37.

Royer testified on her own behalf, claiming that she sent the 264 text messages to Emhoff because "I needed to get the answers that I needed for closure." *Id*. at 184-85. Royer also called her therapist, Daisi Eyerly ("Eyerly"), a licensed clinical social worker who has treated her since 2017, to testify about her existing post-traumatic stress disorder ("PTSD") diagnosis. *See id*. at 187-91. Eyerly testified as a fact witness; Royer did not qualify her as an expert. Eyerly testified that Royer told her about the June 8, 2022 incident at PennDOT that resulted in the text messages. *See id*. Eyerly concluded that Royer felt threatened during the June 8, 2022 incident with Emhoff, triggering her PTSD. *See id*.

At the conclusion of trial, the jury convicted Royer of ten counts of harassment graded as third-degree misdemeanors. *See id*. at 220-21. The trial court scheduled a sentencing hearing and ordered a pre-sentence investigation ("PSI") report.

On May 30, 2023, the trial court conducted a sentencing hearing. The Commonwealth presented a mental health evaluation, performed by the Department of Corrections ("DOC"). The evaluation showed that Royer suffers from mental health issues that significantly impair her judgment, behavior, and ability to recognize reality or cope with the ordinary demands of life and which require treatment in a structured setting, including anger management

to prevent maladaptive and criminal behavior. The evaluator noted during Royer's evaluation that she would be unable to make independent decisions for herself unless she received the recommended treatment. *See* N.T., Sentence Hearing, 5/30/23, at 4. Royer disagreed with the mental health evaluation and made a motion to continue sentencing so that she could obtain a second evaluation and opinion. *See id*. at 3. The trial court denied her request.

At the time of sentencing, the PSI report calculated Royer's offense gravity score as one, and her prior record score as zero. *See* PSI Report, 5/31/23, at 9, 11. The sentencing guidelines provided a standard guideline range of restorative sanctions, plus or minus three months for aggravating or mitigating circumstances. *See* 204 Pa. Code § 303.16(a).

After reviewing the PSI report, which recommended consecutive sentences, the trial court imposed a term of two months to four months' imprisonment for each of the ten counts of harassment, to run consecutively. These sentences were outside the standard guideline range, and the trial court stated on the record the reasons for the consecutive sentences as well as the deviation from the guidelines. In sum, the trial court imposed an aggregate sentence of twenty to forty months' incarceration and ordered Royer to serve it in a state correctional facility. *See* N.T., Sentence Hearing, 5/30/23, at 18-19; *see also* Sentencing Order, 5/30/23.

Shortly after Royer's sentencing, the Jefferson County Court of Common Pleas clerk of courts generated form DC–300B[3] ordering Royer transferred from Jefferson County Prison and committed to the DOC facility at Muncy. *See* Court Commitment State or County Correctional Institution Form, DC-300B, 6/15/23.

Royer filed a timely motion for post-sentence relief, which the trial court denied. Royer timely filed a notice of appeal at each docket, and both she and the trial court complied with Pa.R.A.P. 1925.

Royer presents the following issues for our review:

1. Whether the evidence admitted was insufficient to sustain a conviction for each count of harassment individually and in the aggregate as a whole?

2. Whether the court below committed a reversible error by granting the Commonwealth's motion to divide or to sentenc[e] separately upon [ten] separate counts for the same "course of conduct"?

3. Whether the court below erred by admitting into evidence as purported evidence of harassment work-related communications and other concerns expressed by [Royer], as

---

[3] The DC-300B form serves as a commitment form addressed to the DOC.

Form DC–300B is a commitment document generated by the Common Pleas Criminal Court Case Management System. *See* 37 Pa. Code § 96.4; 42 Pa.C.S.A. § 9764. Section 9764 of the Judicial Code sets forth the procedure associated with transfer of an inmate into DOC custody and provides that, on commitment of an inmate, the transporting official must provide the DOC with a copy of the trial court's sentencing order and a copy of the DC–300B commitment form. *See* 42 Pa.C.S.A. § 9764(a)(8).

*Commonwealth v. Heredia*, 97 A.3d 392, 394 n.3 (Pa. Super. 2014).

many of her emails/text messages were non-harassment as a matter of law, First Amendment protected, or privileged communications related [to Equal Employment Opportunity] EEO, work, or litigation threats?

4. Whether the court below erred and abused its discretion in sentencing [Royer] in the aggravated range without justification and by failing to consider [Royer]'s rehabilitati[on] needs?

5. Whether the court below erred and abused its discretion in sentencing [Royer] to [ten] consecutive sentences in light of the conduct at issue?

6. Whether the court below erred in illegally sentencing pursuant to 42 Pa.C.S.[A.] § 9762 by sentencing [Royer] to state prison when her offenses are not graded as a misdemeanor of the second degree or higher?

7. Whether the trial judge below erred by refusing to recuse himself?

Royer's Brief at 4-5 (issues reordered for ease of disposition, emphasis omitted).

In her first issue, Royer argues that the evidence was insufficient to support her ten convictions for harassment under section 2709(a)(7). Our review of a sufficiency claim is well settled:

A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

- 8 -

*Commonwealth v. Collins*, 286 A.3d 767, 773–74 (Pa. Super. 2022) (citations and quotation marks omitted). Moreover, "we may not reweigh the evidence or substitute our own judgment for that of the fact finder." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (citations and quotation marks omitted).

Pursuant to section 2709 of the Pennsylvania Crimes Code: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6)." 18 Pa.C.S.A. § 2709(a)(7). To prove harassment, it is necessary to show that the defendant intended to harass, alarm, or annoy the person; the intent does not depend on the ultimate effect on the person. *See Commonwealth v. Miller*, 689 A.2d 238, 240-41 (Pa. Super. 1997). "An intent to harass may be inferred from the totality of the circumstances." *Cox*, 72 A.3d at 721 (citations omitted). Further, section 2709(f) defines the term "communicates" to mean "[c]onveys a message without intent of legitimate communication or address by oral, nonverbal, written or electronic means, including telephone, electronic mail, Internet, facsimile, telex, wireless communication or similar transmission." 18 Pa.C.S.A. § 2709(f).

Royer asserts that the Commonwealth did not present sufficient evidence to sustain her convictions for harassment. In presenting her claim, however, Royer does not identify any element or elements of the offense of harassment which were allegedly unproven at trial. Instead, Royer challenges

the number of texts that she allegedly sent Emhoff and contends that she sent Emhoff only 194 texts rather than 264 texts. According to Royer, the trial court permitted the Commonwealth to introduce an excessive number of inadmissible texts to the jury, allowing the Commonwealth to erroneously infer that Royer texted Emhoff more times than she did. Royer points out that, whereas the jury found her guilty of harassment at count five at Docket 383 for sending seventy-eight texts to Emhoff, the jury found her guilty of harassment at count one at Docket 547 for sending only two texts to Emhoff. Royer claims that this indicates that "the jury's reasoning . . . was clearly based only on the aggregate false total conveyed to the jury." Royer's Brief at 54. With respect to the content of the texts, Royer concedes that the text messages contained "some type of profanity," but argues that most of the texts "were about work matters or were relatively innocuous." *Id*. at 53.

The trial court considered Royer's sufficiency challenge and concluded that it lacked merit, noting that "all of the messages utilized at trial . . . and their content and multiplicity were sufficient to establish each count of harassment." Trial Court Opinion, 12/20/23, at 3 (unnecessary capitalization omitted).

As discussed above, to convict Royer of harassment under Section 2709(a)(7), (f) the Commonwealth was required to prove Royer repeatedly sent the text and email messages without the intent of a legitimate communication and with the specific intent to harass, annoy, and alarm Emhoff. The Commonwealth established that Royer repeatedly sent Emhoff

264 texts and four emails between June 8 and July 25, 2022, following her suspension and eventual termination from employment at PennDOT. *See* N.T., Jury Trial, 4/18/23, at 49-52, 129-133, 137. This evidence showed that Royer sent the texts and emails to Emhoff at home, at work, at night, on weekends, during holidays, and at any moment of the day, and that she often used profanity in these communications. *See id*. at 88. Under the totality of the circumstances, the evidence presented at the trial, viewed in the light most favorable to the Commonwealth as the verdict winner, established that Royer intended to harass, annoy or alarm Emhoff when she communicated repeatedly in this manner to him. Thus, we conclude that the Commonwealth presented sufficient evidence to sustain Royer's convictions for harassment. Accordingly, Royer's first issue is without merit.

In her second issue, Royer challenges the trial court's decision to grant the Commonwealth's pretrial motion to amend the informations. Preliminarily, we must determine whether Royer preserved this issue for our review. *See* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). Royer does not refer this Court to the place in the record where she preserved this issue for our review by raising an objection to the Commonwealth's motion to amend. *See* Pa.R.A.P. 2119(e) (providing that where an issue is not reviewable on appeal unless raised or preserved in the court below, the argument must set forth the place in the record where the issue was raised or preserved). Our review of the certified record discloses that no objection to the Commonwealth's

motion was filed of record or raised orally before the trial court. Since Royer did not properly preserve this issue, she has waived it for appellate review.

In her third claim, Royer challenges the trial court's decision to admit the emails she sent to Emhoff on the basis that the First Amendment protects them as speech and admitting them violated a constitutionally protected civil right. Once again, we must preliminarily determine whether Royer has preserved this issue for our review. *See* Pa.R.A.P. 302(a). To preserve an evidentiary issue for our review, a party must make a timely and specific objection. *See Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa. Super. 2003); *see also* Pa.R.E. 103(a)(1)(A) (providing that "[a] party may claim error in a ruling to admit . . . evidence only [if the] party, on the record . . . makes a timely objection [and] states the specific ground, unless it was apparent from the context").

Here, Royer does not cite the place in the record where she timely and specifically objected to her emails as First Amendment protected speech. Royer also does not cite the place in the record where she raised any argument that their admission at trial violated her constitutionally protected civil rights. As our review of the record does not show that she has preserved this issue, we conclude that Royer has waived her third issue regarding the admission of the emails and any related testimony.

In her fourth and fifth issues, Royer claims that the trial court abused its sentencing discretion by failing to consider her rehabilitative needs when imposing consecutive sentences in the aggravated range of the sentencing

guidelines. Royer's claims implicate the discretionary aspects of her sentence. Challenges to the discretionary aspects of sentencing are not absolute. *See Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa. Super. 2019). Rather, we consider such challenges as petitions for allowance of appeal. *See id*. Thus, an appellant must invoke our jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. *Clemat*, 218 A.3d at 959.

Here, Royer filed a timely notice of appeal and preserved the discretionary sentencing issue in her post-sentence motion. She has also set forth a Rule 2119(f) statement in her appellate brief. Therein, Royer claims that:

> 1. The trial court disregarded the mitigating factors presented at the time of sentencing, including: lack of a prior record score (0); that Royer was under the influence of extreme mental or emotional disturbance with a confirmed diagnosis of Post Traumatic Stress Disorder; and the forensic psychological evaluation; and

> 2. The trial court sentence was excessive, unreasonable, and outside the standard range without sufficient justification.

- 13 -

Royer's Brief at 6.[4]

Here, Royer argues that the sentence is excessive, and that the trial court failed to adequately consider her rehabilitative needs. An excessive sentence claim, in conjunction with a claim that the trial court failed to properly consider mitigating factors, raises a substantial question. *See* *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014). Thus, we conclude that Royer has raised a substantial question. Accordingly, we will address the merits of Royer's discretionary sentencing claims.

When considering the merits of a discretionary sentencing claim, we analyze the sentencing court's decision under an abuse of discretion standard. *Commonwealth v. Dodge*, 77 A.3d 1263, 1274 (Pa. Super. 2013). "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Ventura*, 975 A.2d 1128, 1134 (Pa. Super. 2009). "We cannot re-weigh the sentencing factors and impose our judgment

_____

[4] In her brief, Royer also raises "consecutive sentences," which she does not include in her Rule 2119(f) statement. However, the Commonwealth did not object to Royer's 2119(f) statement, but this Court has determined in its own discretion that a substantial question exists allowing review of the discretionary aspects of the sentence imposed by the trial court. *See* *Commonwealth v. Krum*, 533 A.2d 134, 138 (Pa. Super. 1987).

in the place of the sentencing court." ***Commonwealth v. Macias***, 968 A.2d

773, 778 (Pa. Super. 2009).

Our Supreme Court has stated:

Where [a PSI] report exists, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A [PSI] report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention in engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the [PSI] report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand. . . .

***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Royer contends that the imposed sentences were unreasonable because the trial court failed to consider her extensive rehabilitative needs. Royer further argues that her sentence is excessive because the standard range of the sentencing guidelines called for probation on each of her crimes.[5]

At sentencing, the trial court stated that it had the benefit of a PSI report as well as the mental health evaluation. ***See*** N.T., Sentence Hearing,

_____

[5] In the discussion section of her brief, Royer attempts to raise additional discretionary sentencing issues; however, as these additional issues were not included in her Rule 2119(f) statement, we may not address them. ***See Commonwealth v. Perzel***, 291 A.3d 38, 48-49 (Pa. Super. 2023) (explaining "the mandatory nature of Rule 2119(f) statements").

5/30/23, at 2, 5-6, 9-18. Moreover, the trial court provided an in-depth analysis of Royer's criminal history, her conduct during the instant criminal episode, and her prior charges of a similar nature in another county. The trial court also noted the fact that she was on probation at the time of these offenses, as well as her proclivity for committing the same type of acts that led to her current convictions. The trial court stated all these factored into the trial court's imposition of Royer's sentence. *See id*. at 9-18. As the trial court explained:

> The court presided over [Royer]'s trial. There it heard evidence about her age and various ailments — both physical and psychological. It also had a copy of her [PSI] report, which contained all relevant sentencing information, including her rehabilitative needs. From what the court heard at trial, and as [Royer] confirmed while speaking at the sentencing hearing, though, her rehabilitative needs, even had there been an indication that they could have been better addressed outside of the prison setting, did not outweigh the very real threat she posed to the public. The court is no mental health professional, but it was evident that [Royer] had serious behavioral health issues she completely refused to acknowledge, for which she would thus never seek treatment, and the existence of which did not bode well for her ability to reengage in society as a law-abiding citizen. That is to say, the court did not fail to consider [Royer]'s rehabilitative needs, as she postulates. In weighing the enumerated sentencing factors, however, it did not think they warranted a lesser penalty.

Trial Court Opinion, 12/20/23 at 2 (unnecessary capitalization omitted).

Based on Royer's offense gravity score and prior record score, the sentencing guidelines provided a standard guideline range of restorative sanctions, plus or minus three months for aggravating or mitigating circumstances. *See* 204 Pa. Code § 303.16(a). The trial court sentenced

Royer to an aggregate term of twenty to forty months in a state correctional institution; within the aggravated range provided by the sentencing guidelines.

Upon review, we determine the trial court did not abuse its discretion. The record demonstrates that the trial court stated its reasons for imposing aggravated, consecutive sentences during the sentencing hearing. A jury convicted Royer of ten counts of harassment for the repeated conduct of sending 264 text messages and four emails to Emhoff over the course of six weeks. The trial court had the discretion to impose ten separate sentences for Royer to serve consecutively. Additionally, the court stated its reason for imposing sentences in the aggravated range. Moreover, the trial court had the benefit of a PSI report and a mental health evaluation which permits this Court to presume that the court was aware of relevant information regarding all mitigating circumstances, including Royer's rehabilitative needs. *See Devers*, 546 A.2d at 18. Therefore, Royer's assertion that the trial court imposed an excessive sentence and failed to consider her rehabilitative needs is without merit. Thus, we find no relief is due on Royer's fourth and fifth issues.

In her sixth issue, Royer claims that the trial court imposed an illegal sentence. A claim challenging the legality of a sentence is a question of law; therefore, our standard of review is *de novo,* and our scope of review is plenary. *See Commonwealth v. Kline*, 166 A.3d 337, 340-41 (Pa. Super.

2017) (citations omitted). If no statutory authorization exists for a particular sentence, this Court considers it illegal and must vacate it. *See id*.

Section 9762(b) provides guidance as to whether the trial court should sentence a defendant to a period of incarceration in county jail or a term of imprisonment in a state correctional institute and dictates, in relevant part, as follows:

> (b) Sentences or terms of incarceration imposed after a certain date.--All persons sentenced three or more years after the effective date of this subsection [August 6, 2012] to total or partial confinement shall be committed as follows:
>
>> (1) Maximum terms of five or more years shall be committed to the [DOC] for confinement.
>>
>> (2) ***Maximum terms of two years or more but less than five years shall be committed to the [DOC] for confinement, except upon a finding of all of the following***:
>>
>>> (i) The chief administrator of the county prison, or the administrator's designee, has certified that the county prison is available for the commitment of persons sentenced to maximum terms of two or more years but less than five years.
>>>
>>> (ii) The attorney for the Commonwealth has consented to the confinement of the person in the county prison.
>>>
>>> (iii) The sentencing court has approved the confinement of the person in the county prison within the jurisdiction of the court.
>>
>> (3) Maximum terms of less than two years shall be committed to a county prison within the jurisdiction of the court.

* * * *

- 18 -

(i) Prohibition. — Notwithstanding any other provision of law, no person sentenced to total or partial confinement after the effective date of this subsection shall be committed to the Department of Corrections unless:

(1) The aggregate sentence consists of a conviction for an offense graded as a misdemeanor of the second degree or higher; or

(2) The Secretary of Corrections or the secretary's designee has consented to the commitment.

42 Pa.C.S.A. § 9762(b), (i) (emphasis added); *see also Commonwealth v. Mefford*, 863 A.2d 1206, 1209 (Pa. Super. 2004) (explaining that "the plain meaning of Section 9762 is that length of maximum sentence determines where a prisoner is committed"); *see also Commonwealth v. Stalnaker*, 545 A.2d 886, 889 (Pa. Super. 1988) (concerning a trial court's discretion "with respect to determining the place for confinement under 42 Pa.C.S.A. § 9762(b)"). Thus, a court must commit a person sentenced to a maximum term between two to five years to state prison unless each of the conditions in subsection (b)(2)(i)-(iii) are satisfied.

The DOC has the authority to accept and confine inmates committed to it under lawful court orders, as specified in 37 Pa. Code § 91.3 ("Reception of inmates"). *See Joseph v. Glunt*, 96 A.3d 365, 369 (Pa. Super. 2014). This regulation indicates that the DOC's acceptance of an inmate implies its consent to the inmate's incarceration in a state correctional facility, provided that the necessary information required by 42 Pa.C.S.A. § 9764 is supplied. *See* 37 Pa. Code § 91.3. Section 9764 outlines the detailed information that must be

provided upon the commitment of an inmate to the DOC, including medical records, sentencing orders, "a copy of the court commitment form DC–300B generated from the Common Pleas Criminal Court Case Management System of the unified judicial system," and other relevant documentation. 42 Pa.C.S.A. § 9764(a)(1)-(8). The DOC may refuse to accept custody of an inmate if the required information is not provided, but once accepted, the DOC is responsible for the inmate's confinement. *See* 42 Pa.C.S.A. § 9764(c.1)(1)(i)-(iv).

Royer argues that the trial court's sentencing order requiring her to serve her sentence in a state prison is illegal because of her third-degree misdemeanor convictions. She contends that under section 9762(i), the trial court cannot commit her to state prison because her convictions are not "misdemeanor[s] of the second degree or higher," and neither "the Secretary of Corrections nor the secretary's designee has consented to the commitment." Royer's Brief at 49-50.

The trial court considered Royer's illegal sentencing claim and concluded that her sentence does not violate section 9762(b) because the DOC's acceptance of Royer as an inmate implied its consent to her incarceration in a state correctional facility. *See* Trial Court Opinion, 10/20/23 at 1-2.

Here, on June 15, 2023 the Jefferson County Court of Common Pleas clerk of courts generated form DC–300B as required by section 9764 ordering Royer transferred from Jefferson County Prison and committed to the DOC facility at Muncy. *See* 42 Pa.C.S.A. 9764(a)(8). Accordingly, the trial court

properly concluded that the DOC accepted Royer as specified in 37 Pa. Code § 91.3 by signifying its consent to the DOC's incarceration of her under the terms set forth by the trial court and the DOC's regulations. **See** 42 Pa.C.S.A § 9764(a)(1)-(8).

Additionally, a jury convicted Royer of ten counts of harassment graded as third-degree misdemeanors, offenses that each carry a maximum permissible sentence of one year of imprisonment. **See** 18 Pa.C.S.A. § 1104(3). The trial court imposed two to four months' incarceration on each count, within the statutory maximum. The court ordered the sentences to run consecutively, resulting in an aggregate term of twenty to forty months' imprisonment. **See** N.T., Sentence Hearing, 5/30/23 at 18-19.

Royer's aggregate maximum term of forty months' imprisonment is more than two years but less than five years. Section 9762(b)(2) governs the place of confinement where the trial court is authorized to either commit a defendant to a state correctional institution or a county jail. **See id**. Importantly, given of the maximum term of Royer's sentence, the trial court did not have the discretion, and lacked the ability to allow Royer to serve her sentence in a county facility, absent the consent of the Commonwealth and the approval of the administrator of the county facility. **See** 42 Pa.C.S.A. § 9762(b)(2)(i)-(ii); **see also Mefford**, 863 A.2d at 1209. As the record is devoid of any indication of the Commonwealth and the local administrator's assent for Royer to serve her sentence in the county jail, the Sentencing Code required the trial court to order that Royer serve her sentence in a state

correctional institution. Accordingly, the trial court did not impose an illegal sentence when ordering Royer to serve her sentence in state prison. Thus, her sixth claim lacks merit.

Royer's final claim concerns Judge Foradora's refusal to recuse. We have stated regarding recusal:

It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. ***Commonwealth v. Abu-Jamal***, 553 Pa. 485, 720 A.2d 79, 89 (1998).

In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent. ***Id***.

***Commonwealth v. Dip***, 221 A.3d 201, 206 (Pa. Super. 2019) (quotation marks omitted).

We also note that,

[A defendant is] tried before a jury which exercise[s] sole responsibility for evaluating the evidence and arriving at a verdict. Consequently, the integrity of the fact-finding process [is] insulated from any predispositions held by the trial judge who, therefore, [is] properly qualified to conduct [the defendant's] trial.

- 22 -

*Commonwealth v. Sirbaugh*, 500 A.2d 453, 460 (Pa. Super. 1985) (citations omitted).

Royer challenges Judge Foradora's denial of her motion for recusal. Royer alleges that an appearance of impropriety exists because of Judge Foradora's personal ties to her case through his son, who spent a summer working in the same PennDOT office as Emhoff, and her friendship with the judge's first cousin, Denise. Royer points out that: (1) Judge Foradora's son worked at PennDOT during the summer of 2022 and applied to work there again in the summer of 2023; (2) during the trial, his cousin Denise stayed at Royer's home to care for her cat; and (3) after her conviction, because Judge Foradora did not give her probation or a reduced sentence, his cousin Denise benefitted from being able to live in Royer's home rent-free, making Judge Foradora appear biased and prejudiced.

Judge Foradora addressed Royer's final issue and determined that it lacked merit. The court held a brief hearing on Royer's motion for recusal on April 5, 2023, at which Judge Foradora stated that even though his son worked in the same PennDOT office as the incident, he did not receive information about or become involved in his son's employment application process. *See* N.T., Hearing, 4/5/23, at 3. Judge Foradora added that it had been years since he had seen his cousin, Denise. *See id*. at 4.

Based on our review, we discern no abuse of discretion by the trial court in denying Royer's motion for recusal. Royer relied on facts about Judge Foradora's personal life, specifically regarding his son and cousin Denise, to

support her claims of unfairness. Royer did not present anything substantial in terms of either of the judge's relationships to support her claims of impartiality or the appearance of impropriety. Royer bore the burden to produce evidence establishing bias, prejudice, or unfairness, to raise substantial doubt as to the jurist's ability to preside impartially in the instant proceedings. *See Dip*, 221 A.3d at 206. Furthermore, a jury heard this case, and it independently determined Royer's guilt for the crimes in question. Thus, as we discern no evidentiary basis upon which to disturb Judge Foradora's denial of Royer's motion to recuse, Royer's final issue merits no relief.

Accordingly, as Royer's is not entitled to relief on any of her claims, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/12/2024