J-S34025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| STEVEN ALLEN HOWANIETZ | : | |
| | : | |
| Appellant | : | No. 1697 MDA 2024 |

Appeal from the Judgment of Sentence Entered November 7, 2024
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s):  CP-49-MD-0000532-2024

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:                    **FILED: DECEMBER 23, 2025**

Steven Allen Howanietz ("Howanietz") appeals from the judgment of sentence imposed after the trial court found him guilty of indirect criminal contempt for violating a protection from abuse ("PFA") order.[1]  Because there was sufficient evidence to conclude that Howanietz violated a no-stalking provision of the PFA order, we affirm.

We summarize the background of this appeal from the record. Howanietz and the victim had dated and lived together for almost a year. Around June 2024, the victim obtained a final three-year PFA order against Howanietz.  Howanietz repeatedly violated the PFA order, which resulted in two prior convictions, and he committed a third violation that occurred when Howanietz contacted the victim by phone on September 15, 2024 ("the

---

[1] **See** 23 Pa.C.S.A. § 6114(a); **see also** 23 Pa.C.S.A. §§ 6101-6122.

September 15th contacts"). The present appeal concerns a fourth incident, which occurred on September 16, 2024, when Howanietz passed by the victim's home multiple times on a bicycle ("the September 16th incident").

At the trial for the September 16th incident, the Commonwealth proceeded on the theory that Howanietz violated a no-stalking provision of the PFA order. *See* N.T., 11/7/24, at 6, 10, 27-28.[2] During her testimony, the victim conceded she did not personally see Howanietz during the September 16th incident; rather, the victim explained she installed security cameras at her home because of Howanietz, and she began reviewing the footage after a neighbor, on September 17, 2024, told her about seeing Howanietz in the area. *See id*. at 7-8, 15-17, 20. The victim located the security camera footage of the September 16th incident and reported it to the police on September 19, 2024. *See id*. at 15-17. The victim described finding the footage as "very disconcerting[,]" and she testified that the footage showed Howanietz "multiple times coming around my house. Stopping, getting off the bicycle that he was on, looking up and staring into my yard." *Id*. at 5, 17.[3]

---

[2] The record does not contain a copy of the PFA order, but the victim testified that pursuant to the PFA order, Howanietz was not to "harass, stalk[,] or intimidate" her. *See* N.T., 11/7/24, at 6. Howanietz does not dispute that the PFA order included a no-stalking provision.

[3] The victim testified she lived at the top of a steep hill, there were no businesses in the neighborhood, and Howanietz had no acquaintances in her neighborhood or town. *See* N.T., 11/7/24, at 6.

The Commonwealth also presented the victim's testimony about the September 15th contacts, when Howanietz called and texted her. Howanietz objected, noting that by the time of the present trial, the September 15th contacts had resulted in Howanietz's third conviction for violating the PFA order. The trial court overruled the objection, and the victim described the September 15th contacts as follows:

> It was him getting back in contact with me and, again, trying to say about working things out and things like that. I immediately left [sic] the police know about the first time when he was calling and texting. Then later that night he began again, which had me very scared. And I would not leave my house the next day[, *i.e.*, during the September 16th incident,] because I found out that the second number -- belonged to someone in Montgomery [Borough], which is very close to [where I lived]. So I knew he was close by, so I would not leave my house the next day.

*Id*. at 12.

Howanietz did not testify. His defense focused on the PFA order's prohibition against his being present at the victim's home, and his cross-examination of the victim highlighted that he remained on public road and never crossed onto the victim's property. At the conclusion of trial, the court convicted Howanietz and imposed a sentence of six-months term of probation, fines, costs, and supervision fees.

Howanietz timely appealed and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. Although the Rule 1925(b) statement contained a typographical error in the trial court's case number, the docket memorialized its timely filing in the present record. The trial court elected not to address Howanietz's Rule 1925(b) statement due to the typographical error

and suggested it lacked jurisdiction to allow Howanietz to file a corrected Rule 1925(b) statement *nunc pro tunc*.[4]

Howanietz raises the following issues on appeal:

I.  Whether the evidence introduced at hearing is insufficient to show beyond a reasonable doubt that Howanietz violated the [PFA order].

II. Whether the Court of Common Pleas of Northumberland County abused its discretion by allowing evidence of prior adjudicated indirect criminal contempt violations to be introduced as evidence.

Howanietz's Br. at 5 (some capitalization omitted).

Howanietz's first issue challenges the sufficiency of the evidence based on his claim that the PFA order excluded him from the victim's property. ***See id***. at 5, 10. Howanietz's second issue on appeal appears to challenge an evidentiary ruling by the trial court; however, a further review of his brief establishes that he raises a separate sufficiency of the evidence claim based on the no-stalking provision of the PFA order. ***Compare id***. at 5 with ***id***. at 11-15. We address Howanietz's first and second issues together as challenges to the sufficiency of the evidence supporting his ICC conviction.

When considering a challenge to the sufficiency of the evidence, an appellate court's standard and scope of review is *de novo* and plenary. ***See***

---

[4] Although the Commonwealth suggests a remand for the trial court to prepare a supplemental Rule 1925(a) opinion, this is a relatively straightforward case in which the claims on appeal may be resolved as a matter of law. Therefore, we need not remand for a supplemental opinion. We note that we have yet to locate authority that divests a trial court of jurisdiction to consider a timely, albeit technically defective, Rule 1925(b) statement where it has been docketed and filed in the record.

*Commonwealth v. Chisebwe*, 310 A.3d 262, 267 (Pa. 2024).  This Court reviews the evidence and all reasonable inferences from the evidence as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[ ]finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact[]finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact[ ]finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 109-10 (Pa. Super. 2007) (citations and quotation marks omitted).

Indirect criminal contempt occurs when a person violates an order or decree given by a court outside of the presence of the court.  *See Commonwealth v. Boyer*, 282 A.3d 1161, 1163 n.1 (Pa. Super. 2022). To establish indirect criminal contempt, the Commonwealth must prove four elements: (1) that the court's order was sufficiently definite, clear, and specific, and left no doubt in the contemnor's mind as to the prohibited conduct; (2) the contemnor had notice of the order; (3) the act constituting

the violation was volitional, not accidental; and (4) the contemnor acted with wrongful intent. *See Brumbaugh*, 932 A.2d at 110.

In the present case, the Commonwealth prosecuted Howanietz for violating a no-stalking provision of the PFA order. *See generally* 23 Pa.C.S.A. § 6108(a)(9) (authorizing a court, when issuing a PFA order, to direct the defendant to refrain from stalking the plaintiff as defined in 18 Pa.C.S.A. § 2709.1). Section 2709.1 defines stalking as follows:

> A person commits the crime of stalking when the person either:
>
> > (1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person; or
> >
> > (2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

18 Pa.C.S.A. § 2709.1(a). Section 2709.1 defines a course of conduct as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct;" the statute also defines emotional distress as "[a] temporary or permanent state of mental anguish." 18 Pa.C.S.A. § 2709.1(f). As this Court has stated, "[S]talking requires a repetitive course of malevolent conduct, the intent of which was to place someone in fear of bodily injury or cause substantial emotional distress."

*Commonwealth v. D'Collanfield*, 805 A.2d 1244, 1249 (Pa. Super. 2002) (internal citation omitted).

On appeal, Howanietz emphasizes those portions of the PFA order that excluded his presence from the victim's residence and prohibiting him from contacting the complainant. Howanietz's Br. at 10. He insists that because he remained on a public road, he did not violate those conditions of the PFA irder. *See id*. at 10-11. Howanietz also contends that the Commonwealth did not prove a violation of the no-stalking provision of the PFA order because the victim was unaware of his presence outside her home during the September 16th incident, the Commonwealth did not establish he knew the victim was inside her home, and the victim did not learn of his presence outside her home until the following day. *See id*. at 14-15.[5]

We conclude there was sufficient evidence proving, beyond a reasonable doubt, that Howanietz violated the PFA order. Howanietz's initial arguments that he did not cross the victim's property line or make contact with her during the September 16th incident are misplaced. The Commonwealth here proceeded on a theory that Howanietz violated the no-stalking provision of the PFA order, and stalking does not require a trespass or actual contact between the defendant and the victim. *See Commonwealth v. Abed*, 989

---

[5] To the extent Howanietz suggests the Commonwealth could not rely on a prior conviction to establish stalking during the September 16th incident, *see* Howanitez's Br. at 8, 12-14, this Court has rejected a similar argument. *See Commonwealth v. Roefaro*, 691 A.2d 472 (Pa. Super. 1997) (holding that prior bad acts evidenced by criminal convictions may be introduced at a subsequent trial to prove the course of conduct element of stalking).

A.2d 23, 27 (Pa. Super. 2010); ***Commonwealth v. Miller***, 689 A.2d 238, 240 (Pa. Super. 1997).

Moreover, the record, when viewed in a light most favorable to the Commonwealth, established that Howanietz violated the no-stalking provision of the PFA order by engaging in a course of conduct that demonstrated an intent to cause substantial emotional distress to the victim. There was no dispute that the victim obtained a PFA order against Howanietz and enforced it, resulting in two convictions before the September 16th incident. The victim thus demonstrated Howanietz's continued pursuit of relations with her were not only unwelcome but also wrongful. On the day before the September 16th incident, the victim reported Howanietz's September 15th contacts with her to police, and she locked herself in her home in fear of Howanietz. ***See id***. at 12, 16. Thus, when, on the following day, Howanietz repeatedly passed in front of the victim's house and stared into her yard, there was ample basis for the trial court, as the finder of fact, to conclude he was engaging in a volitional course of conduct that demonstrated his wrongful intent to violate the PFA order and cause the victim substantial emotional distress. ***See Miller***, 689 A.2d at 241;[6] ***Commonwealth v. Crawford***, 24 A.3d 396, 405 (Pa. Super.

_____

[6] We note that Howanietz attempts to distinguish ***Miller***. He asserts that he merely "passed [the victim's] residence on a public road," and did not repeatedly follow the victim from her home to shopping areas back to her home. Howanietz's Br. at 14. He also emphasizes that the victim was not aware of his presence outside of her home until the day after the September 16th incident. See ***id***. We find these attempts to distinguish ***Miller***
*(Footnote Continued Next Page)*

2011) (noting that "[t]he Commonwealth is not required to depend upon proof by direct evidence, but may also meet its burden by circumstantial evidence alone"); *accord Commonwealth v. Hardy*, 270 A.3d 1133, 2021 WL 5858534, at *2 (Pa. Super. 2021) (non-precedential mem. decision) (affirming a stalking conviction based on the totality of the circumstances); Pa.R.A.P. 126(b).

In sum, having reviewed the record, the relevant law, and Howanietz's arguments, we conclude Howanietz's challenges to the sufficiency of the evidence merit no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/23/2025

---

unpersuasive, particularly when *Miller* focused on the intent of the defendant, not the reaction actually elicited by the defendant. *See Miller*, 689 A.2d at 240-41 (stating, "We are aware of no caselaw which holds that the extent of a person's intent may be measured from the ultimate effect upon the victim").